Good morning, Your Honor. Michael Kennedy, here on behalf of his cousin, Mr. Keith McCord, and counsel. I will try to reserve two minutes for rebuttal. There are three points of error, primarily, that I'd like to focus on. First, the government's failure to, in present tense, maintain high recognition to the sentence in court for the low-end 48 months. Second, in combination with that, faced with a pre-sentence report urging an upward departure and an upward variance, silence on that matter, compounding that error. And third, the sentencing court finding that Ms. Benvin had agreed to a plenty of allegations, which were, from the indictment, word for word, placed into the pre-sentence report, for which she had expressly, in compliance with Rule 32, asserted her right to remain silent, as to that, since there was nothing in dispute between the government and the defense in terms of the sentence, that all parties agreed the restitution should be $260,000, and that was the sole binding term. But there was agreement that, to the 48 months, the amount of loss was agreed to $3 million, because that was the amount that Ms. Benvin had confessed in the bankruptcy proceeding that preceded the entire criminal case. So, with respect to those issues, the first, the error did occur. The government did not either, explicitly, expressly, or by implication, make a recommendation for 48 months. Was there an objection made? No, and that's why … But your manager is saying, Bob, since you don't trust this, who is? I am. It's not enough that it could be a little clearer on your point. You're absolutely right. As I put it in the brief, I'm trying to do as much as I could from his perspective. The way it was in the context, I didn't decipher it because the comments were, we made a promise, the rules recommend the loop, and so there were two statements. So, in the plain error view, it is clear because the agreement itself couldn't be clearer. The no argument for 48 months was made. It's a prejudice to Ms. Benvin is not only did she not receive the loan in 48 months, she did not receive a guideline sentence. You know, when we were discussing the wording. Yes. The prosecution did advise the Samson judge that they had agreed. Correct. And the complaint of only eight years. But how they said that, it's an infusion of dismissal. That is true. That is true. There was no objection. And so, what Myers said, I certainly can't. Tell me the difference between how what they said did not convene to the judge. In fact, the thing that they recommended. So, the context was he was in the context of whether the government counselor responded to defendant's sentencing memo. The guideline range had increased by just 11 months. So, it was made in the context of we had made a promise to recommend it. The guideline range is now lower. And so, in that context, the inference is that's sort of a wink and a nod that we wouldn't have done it at this point. And what the Johnson case held was the statement which they said by implication was I am bound by the plea agreement to argue for the low end. So, I'm not going to take that on. There was none of that here. And, in fact, when the district judge asked about upward departure or variance, which I impose upward departure on clear grounds and argue for the variance, the prosecutors found there was. I'm going to get in trouble if I address that. Those comments are the antithesis of someone showing up and saying, my promise, my contract is to recommend the low end. But you don't have to do it enthusiastically. You don't have to do it the same way the defense lawyer would. But what Myers says, what Johnson says, what Carrillo says is that you need to do it. And here there was prejudice for Ms. Benvenuto. She ends up with a maximum term sentence. But even if you don't like it about us, what we're really trying to do is convey information to the judge. Yes. And apparently strong household. Again, so they saw no problem because there's no objection. Isn't it fair to say that perhaps the judge saw it the same way, that he saw it the same way? That's what has played their analysis. I don't think so, Your Honor, because if it was, if he saw it, he should have asked the government, why are you not objecting to an upward variance, or an upward departure, or even going for an in-backline sentence when there's no response from them, when there's silence to that? Because even an interview. It is in advance, though, of what they agreed to. Are you suggesting the judge forgot what those words meant? I'm suggesting that in the Myers case, they held that simply putting it into, there's no pleading that the government filed where they had the 48 months when they recommended it, so that can't. And basically, it was stated, and that's why I agreed to it in the past. And so what Myers says, the promise to make the recommendation, which is what the reference really was here, is not the equivalent of making it. And there's a difference when the court is sentencing. The court is looking to what's happening is. What case held that, that that was plain error? In Myers, it was not plain error, because the Supreme Court had not put it under the plain error standard at that time. It had not been decided at that point. So under the plain error analysis, as I went through it, what I'm suggesting is Myers, Johnson, and that line of cases, Cartwell, I would count to three-sixths and a third, show that it is error. It's clear error based on the plenary. But then when we get to the prejudice, if the court had sentenced Ms. Beckman within the guideline range, I would not be here, because there is a waiver in the plenary. Well, perhaps we can get to something a little easier for you. That's a hard case that you're sticking, but at least as I see it, it looks like the PSR that the judge relied upon did not indicate the factual underpinning of its description for what your client had agreed to, had planned to. That is correct. And if that's correct, even though there was no objection, then is there not procedural error, serious procedural error, by the district judge that requires a remand and a resentencing, which would basically obviate all the other arguments, because you're starting all over again? That is true, and that would be the first point of an error that I mentioned, because in Mitchell, the second part of that is the Fifth Amendment is alive, but what Mitchell said, whether in determining the facts about the crime which are part of the severity of the sentence, a trial court may draw an adverse inference from the defendant's silence. We won't name names. Well, I was there and had adverse inference there. She just chose not to contest the allegations. Those allegations weren't based on her silence. There's no denial of acceptance or responsibility, but it's the silence. That is true, but they're used to increase her sentence, which would give up her departure. Not the silence. The allegations, which were not disputed. Which were not, well, they were not disputed because she exercised her constitutional right to do so. It's something separate. I mean, if I stepped at your premise, then they can't find you guilty because she's exercising her right to silence. The government's free to prove the case in other ways. The PSR is free to rely upon other things in making the allegations. But the relevant conduct and the facts in the plea did not include those mere allegations. No, but the pre-sentence report is drawn on lots of information, and our law says that if the defendant doesn't dispute it, the court can rely upon it. You elected not to dispute it. Now, you could have disputed it in ways other than your testimony, but you didn't. In fact, the government didn't seek those facts as part of relevant conduct. So there was no misleading. It very much is part of relevant conduct. No, they agreed to the free evidence. I would say the relevant conduct has been proven by preponderance of the evidence. And the government could have been put to the test if the defendant had elected to dispute the statements in the pre-sentencing report, but she didn't. And the argument that I would make, in a case where the government was seeking to prove those facts, I would agree with the court. But here, the government was not seeking to prove those facts. Those facts had been dismissed. They were not made part of the offensive conviction nor the relevant conduct on the basis of the $3 million. So that's the distinction, and that's why it's an erroneous factual error. Thank you. Before you leave, just this is the statement that we're focusing on. This is the prosecutor. I have presented a lot of fraud cases where somebody set out from the very beginning to commit fraud, and the business or plan or scheme was fraudulent from the very beginning. This wasn't the case here, and that's one of the main reasons, as Mr. Kennedy has pointed out, that in the plea agreement, the government agreed to recommend a low end. And you feel that is not sufficient to advise the judge that the government is recommending a low end? Correct. That is not, because it's speaking in terms of that's what we did in the past, and there was no affirmative recommendation with respect to the court's question about the excerpt of Regard 36 would be where this amendment was, where the judge said everyone should agree to it when the amendment had been asserted. Thank you very much. Thank you. Is there anybody else? Good morning. Yeah, thanks, Clark. My name is Dr. Elizabeth Weintraub of the United States. First of all, there was no objection to the pre-sentence report. Court 32 says that in sentencing, a court may accept any undisputed portion of the pre-sentence report as a statement, as a binding effect. At the beginning of the sentencing hearing, the court confirmed that the defendant had had ample time to go through it thoroughly with her during the pre-sentence report, and then asked, all right, are there any factual objections to the report? I think also with respect, and perhaps I misunderstood, but I thought that part of the problem was that there was just, the PSR doesn't even contain the factual underpinning that tied with what was said. I mean, I understand if there's an objection and you have a statement one way or another, it's backed up somewhere in the PSR. That's one thing, but there's just a complete dichotomy between what she had pled to, and what she did, more importantly what she did, and what the PSR said. Did I misunderstand? I think so. I mean, the PSR frequently talks about other relevant conduct beyond the specifics of the count of conviction, and here we have a judgment several times. We've got a 21-page pre-sentence report that describes it in full, the extent of this to describe how she had agreed the guilty to one count of a 50-count indictment, and that was the agreement that she made with the government. So if this case, for example, indicates in the PSR that in advance of all more than 70 loans, in which she placed over $35 million of investors' money and affected over 150 individuals and the investors, she pled to one count. She maintained her constitutional silence on the balance of it. Is it the government's position that there was enough evidence in the PSR and available to back up what I read just a minute ago? Evidence in the PSR didn't have it, and it disputed those statements. Then the government would have been put to the burden of proving those facts by having hundreds of evidence, and we could have done so. So is the government's position that if the PSR said that the loan is made of green cheese and this defendant stole it and sold it to a lot of your equipment, she's built on that? Is that your position? I don't know. I would hope that she was. I would hope she was. I mean, the NLC agreement, this is an excerpt from Record 101, the court may consider, this is a party stipulatement, that the court may consider any counts dismissed under this NLC agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable guideline of sentencing range and whether to depart from that range. Now, it is true that this statement of all of the relevant conduct in the present report is essentially from the indictment. I mean, it is essentially describing the counts that were dismissed. Well, what I'm struggling with is this. In our system, it has to be a matchup of who's guilty, who's not guilty, what's charged, what's not. If the indictment has ten parts and you go to trial and only one is found guilty, you can't sentence the person based upon the other. I'm not sure you can. Well, Watson is. Even including conduct in self-service cases can be the basis. The Supreme Court is interested in doubling arms and getting something like Watson. This is even in sentencing. I mean, when it's sentencing, of course, the court is bound by this statutory range of the offense. Right. But the court can take into account all relevant conduct. And here, the defendant agreed with the plea agreement that the court could take into account all relevant conduct. So if the defendant had said, when the court said, are there any objections, if they had said, well, you know, there's all of these pages and pages of stuff that is just pure allegations, none of which has been proven, none of that should be taken into account, the prosecutor could have stood up and said, well, we'd like to make a showing then, or the prosecutor could have said, yes, you're right, or the court could have said, you know, I'm not going to take that into account. But by not making any dispute, the Rule 32 says the court can accept that as a finding of time. Now, this is very different from Mitchell because we didn't get to this step. I mean, in Mitchell, the defendant had pleaded guilty but reserved the right to challenge the drug quantity in sentencing. And at sentencing, the government presented three co-defendants. And what the judge said is, you know, I think what the judge will say is, these are kind of sketchy guys, but I'm going to go ahead and find their testimony credible. And one of the reasons I'm doing that is because, of course, I am drawing an adverse inference from your failure to come up here and contest that. And you're in the jury's list. You have a Fifth Amendment right not to. I don't think that's right. If the Court of Appeals tells me that I'm wrong about this, I'll come back and I'll take a closer look at these co-defendants and see if their testimony alone is really enough to establish it. And that's where the adverse inference came in from the different silence here. There was no inference to be drawn because the judge didn't have to resolve the dispute. And so we just don't even get to that. And I did. And I do apologize for the very late I filed a 28-day letter yesterday. The first thing I do when I get back to Reno is going to be to sign up for remedial Westlock class. Because I can't believe I didn't do this until yesterday. But this Court has said that Mitchell cannot be, does not support a rule that no consideration can be given to the fact that the defendant offered no evidence to challenge the accuracy of the PSRA last year. So that's not what's at issue here. So Bob Linn, a case full of little C-32, from your perspective. The defendant doesn't object. He or she is just out of luck. Whatever it is, however outrageous, however free of any relevant facts, has proven in the case. I think that's probably true. That's not the situation here. I don't think any of these are outrageous or are more beyond belief. But then the other comment, the other point, if I could go to... Let me just explore this a little bit for you. Would it be an IAC claim if the defense counsel had objected and something outrageous like that were contained and the defendant was sentenced to something really, really laudable and there was never any proof of it? Or any, other than some wild allegation that they were close to being true? It could be. But in adding up, if it's 2265, the defendant would be obligated to prove that it wasn't true or it's just reliable. But yes, I think that would be the sit there. Going to the prosecutor's comments and sentencing, the prosecutor started out by explaining it to the court as Judge Walters pointed out why it was, why it didn't agree to recommend the law and guidelines. It was that this is not a case of someone setting out from the very beginning to rip people off. This was a legitimate business and got in trouble. I think he certified GQ in there. A little fraud, a little fraud, and then pretty soon, your victims are defrauded from millions of dollars and have lost their life savings in their homes. And so what the prosecutor said was, Judge Wallace ran, but then he said that the defendant filed a sentencing memo and I didn't file a response because he's right. Because he said that the government agreed to recommend the law and sentences. He's correct. The range that we had agreed to has since been lowered. He's correct. And so, he's right. There's nothing, I have nothing to contest here. Now, to the extent that the defense process says, or the defendant says, opening brief page 25, that they didn't realize that the prosecutor hadn't said the last words, or he didn't say anything to the prosecutor, he would have to do the judge, right? And so the judge made very clear, the judge actually said that if there was ever a case that, let's see if I can find it exactly, if there was ever a case that called for the defendant to be, if there was ever a case that was foregoing as far as you can under the law, this would be one, this would be the one. Now, my comments should not be interpreted as any criticism of the United States Attorney's Office. So the court was recognizing that the government was cutting this defendant a break, even though in the court's words, page 426, the seriousness of this crime is overwhelming. The court went on for eight pages talking about how this is a defraud in the heart and soul of our community. He never, in 15 years on the bench, he never got as many victim impacts even seated in this case. And so that goes also to the third point of plain error, that even if you can say that this was error by not seeing these national courts, there's no bridges. I'm over my time. Oh, there's another point. Are you glad I was over my time? Very quickly, the one point that I would want to just emphasize. At one point, the prosecutor said, I'm not going to say anything about an upward departure because that might get me into trouble. And I think that you have to understand the position that the prosecutor is in there, right? I mean, we've agreed to recommend a low and high license, and we're maintaining that position. And part of what we know from the cases is that you can't say anything that would appear to contradict that recommendation. And here, what you've got is the defense counsel who just stood up and said that the suggestion of an upward departure, probation recommended a three-month upward departure, wrong as a matter of law and not legally sustainable. Now, frankly, should the prosecutor let that go? I'm challenged, and I think that has an ingredient in the correct statement for a couple of reasons. It suggests that 5K2 is still analyzed mannedly. It ignores that she had the five aggregated identity that she has, but it's as if she would have carried two years minimum. So, for all of those reasons, you know, you've got to navigate. When the other side says something that you really think is wrong, you want to respond. And I think that that's the context in which the emergency prosecutor made that statement. Now, I'm off of my time. Okay. I think, again, I don't think you have any time left for a rebuttal. You know, we went to the end, but I just want to ask you an extra question and we'll give you a minute. I don't know if that will be sufficient. When you got on page 57 of the excerpt of records, what was the objection of the constitutional issue was we agreed beyond the offense and conviction and the stipulations made in the plea agreement. So, there was an agreement to relevant conduct, which was remaining silent, which was things that were not part of relevant conduct. It's either as crazy as the Pluton. The problem would be that would have taken six months as I took the court to deal with all those issues and the government wasn't pursuing it. Is it your position that you didn't object to the PSR because you had a deal to get them sentenced in a particular way? There was no point in objecting. We had a deal to what relevant conduct was. We had a deal to what the guidelines were. We had a deal on all fours, and so it wasn't material if the government wasn't seeking it. So, in that situation with the pre-sentencing report, the probation office recommended a higher sentence. No, they found the same guideline. They told you that's not the question I asked, was it? And it's true, and that's why I'm answering the question I asked. What sentence did they recommend? They recommended 60 months. So you knew the possibility of a higher sentence was on the table? And I objected to it under 5K2.21 because the count of conviction, the offense conviction, carried a range of 30 to 37 months. So my response was relevant conduct, which the government agreed to, got us to 46 to 57 months. And so under that provision, U.S.C. 5K2.21, it wasn't a proper departure on the variance. I objected in the memo there and said neither the government nor I believes that the 3553 factors should be varied. See, the government's made mistakes. Did you just record well by that? Did you see the answers? No, it was not correct. That is correct. So you knew the possibility of a sentence up to the maximum, 60 months was on the table, and you knew that when you elected not to dispute the statements in the presidency report? Because also... I don't want the because. I want did you know. Absolutely, because there's a constitutional right to do so. For sure. You have a constitutional right to plead guilty, too. That doesn't mean you can complain afterwards. But if there is no dispute about it, go again. I made the judgment that she must serve her constitutional rights, so that is correct. Thank you, sir. Thank you both for your argument. Very helpful. The case just argued is submitted.
judges: Wallace, Clifton, M. Smith